IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ANGELA COMFORT, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | Civil Action No. 3:24-CV-2250-D |
| § | |
| UMB FINANCIAL CORPORATION, § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Angela Comfort ("Comfort") against defendant UMB Financial Corporation ("UMB") alleging, in pertinent part, claims for disability discrimination and retaliation, in violation of the Americans with Disability Act ("ADA"), and failure to pay overtime wages, in violation of the Fair Labor Standards Act ("FLSA"), Comfort[1] moves to strike a corrected attorney lien notice filed by her former counsel, Harman Green PC ("Harman Green"). For the reasons that follow, the court denies the motion.

I

Comfort was originally represented in this lawsuit by Harman Green under the terms of a written contract ("Contract"). Harman Green successfully moved to withdraw, citing irreconcilable differences stemming from attorney-client communications. Shortly after withdrawing, Harman Green filed a notice and corrected notice of attorney lien. Comfort and UMB's counsel were able to reach a settlement of the lawsuit a few months later. But before

---

[1]The motion to strike is signed by Comfort's husband Russell Comfort.

the settlement talks were completed, Comfort discovered the lien notice, which triggered the motion to strike. Comfort now moves either to strike the attorney lien or for a declaratory judgment against the validity and enforceability of the lien. The court is deciding the motion on the briefs, without oral argument.

II

This lawsuit alleges, in part, violations of two federal statutes: the ADA and the FLSA, thereby establishing federal question jurisdiction under 28 U.S.C. § 1331. The court has supplemental jurisdiction to decide this fee dispute because it relates to the fees generated in the original action. *See* 28 U.S.C. § 1367. "[T]he court has the power to settle fee disputes arising out of that original action without regard to the citizenship of the disputing attorneys and other niceties." *Clark v. Kick*, 79 F.Supp.2d 747, 750 (S.D. Tex. 2000); *see Broughten v. Voss*, 634 F.2d 880, 882 (5th Cir. Jan. 1981).

The basis for granting supplemental jurisdiction "is the responsibility of the court to protect its officers." *Broughten*, 634 F.2d at 882 (citing *Nat'l Equip. Rental, Ltd. v. Mercury Typesetting Co.*, 323 F.2d 784, 786 n.1 (2d Cir. 1963)). The Fifth Circuit has held that, if an attorney voluntarily withdraws from a case for good cause and without disrupting proceedings, the court will act to protect its officers. *Id.* at 882-83. Therefore, acting under its supplemental jurisdiction, "[i]f, upon withdrawal, counsel is unable to secure payment for his services, the court may assume jurisdiction over a claim based on a charging lien over the proceeds of the lawsuit." *Id.* at 883 (citing *Doggett v. Deauville Corp.*, 148 F.2d 881, 883 (5th Cir. 1945)).

Relatedly, when the Fifth Circuit has considered cases involving attorneys attempting to intervene to collect attorney's fees, it has routinely held that an attorney's contingent fee is a sufficient "interest relating to the property or transaction that is the subject of the action" for purposes of intervention. *Adam Joseph Res. v. CNA Metals Ltd.*, 919 F.3d 856, 866 (5th Cir. 2019) (citing *Valley Ranch Dev. Co. v. FDIC*, 960 F.2d 550, 556 (5th Cir. 1992)). To force an attorney and his law firm to institute another action to attempt to recover funds generated during the current proceeding would be prejudicial.

Harman Green voluntarily withdrew from this lawsuit for cause and has uncompensated fees generated during the course of its representation of Comfort. Therefore, to avoid prejudicing Harman Green, the court can exercise jurisdiction to rule on Comfort's motion to strike or for a declaratory judgment. *United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 415-16 (5th Cir. 1991) (citing *Gaines v. Dixie Carriers, Inc.*, 434 F.2d 52, 54 (5th Cir. 1970)).

III

"Under Texas choice-of-law rules 'in those contract cases in which the parties have agreed to an enforceable choice of law clause, the law of the chosen state must be applied.'" *ProMED, LLC v. Quintairos Prieto Wood & Boyer, P.A.*, 2024 WL 4574306, at *3 (N.D. Tex. Oct. 24, 2024) (Fitzwater, J.) (quoting *Resolution Tr. Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1318 (5th Cir. 1992)).[2] Section XIII of the Contract provides that it "shall

---

[2]"In federal question jurisdiction cases, where a court is exercising supplemental jurisdiction over state-law claims, a federal court also applies the choice of law rules of the

be governed by and construed under the laws of the State of Texas without regard to principles of conflicts of laws." P. Mot. To Strike (ECF No. 24-3) 7.  Therefore, for purposes of determining the validity of the Contract between Harman Green and Comfort, Texas law controls.  When interpreting a written contract, "[t]he court's primary concern is to enforce the parties' intent as contractually expressed, and an unambiguous contract will be enforced as written." *Ryder v. Shell Oil Co.*, 131 F.Supp.3d 635, 643 (S.D. Tex. 2015) (citing *Interstate Contracting Corp. v. City of Dallas*, 407 F.3d 708, 712 (5th Cir. 2005)), *aff'd*, 652 Fed. Appx. 234 (5th Cir. 2016).  "A contract is unambiguous if it can be given a definite or certain legal meaning." *Id.* (citing *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 294 (5th Cir. 2010) (internal citations omitted)).

    Harman Green and Comfort created an attorney-client relationship by contract.  Section II of the Contract outlines the scope of Harman Green's representation, stating, in pertinent part, that Harman Green "agreed to represent [Comfort's] legal interests with regard to [her] claims concerning employment disputes." Harman Green Resp. to Mot. to Strike (ECF No. 24-3) 2.  Sections IV and V specify how attorney's fees and costs and expenses are to be addressed during the representation.  Section IV covers attorney's fees and states, in pertinent part: "[i]n consideration for the legal services to be rendered by [Harman Green] after today's date ('attorney's fees'), [Comfort] hereby agree[s] to pay us a contingency

---

forum state to the state law claims." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 511 F.Supp.2d 742, 790 (S.D. Tex. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

fee[.]" Harman Resp. to Mot. to Strike (ECF No. 24-3) 3). Section V covers costs and expenses, detailing a non-exhaustive list of fees that Comfort can incur during the course of Harman Green's representation. This section also includes a hypothetical to demonstrate how costs and expenses come "off the top" and do not reduce the contingency fee percentage outlined in Section IV. The clear delineation between attorney's fees and costs and expenses, accompanied by a hypothetical, create an unambiguous fee structure that needs no further judicial interpretation.

Sections VII and VIII outline the procedure for determining what fees are owed in circumstances where either party terminates the Contract. Under § VIII, if

> the Firm terminates the Retainer for any of the reasons listed in Section VII of the Retainer, the Firm is immediately entitled to any and all costs and expenses advanced on your behalf and the reasonable value of its legal services, calculated as the greater of either (1) quantum meruit . . . or (2) a portion of the litigation proceeds in reliance on the contingency agreement.

Harman Resp. to Mot. to Strike (ECF No. 24-3) 5-6. Alternatively, "[i]f the Firm terminates the agreement for any other reason besides those listed in Section VII of the Retainer or if [Comfort] terminate[s] the agreement for cause, [Comfort] do[es] not owe anything for legal service (though [Comfort] will still owe costs and expenses)." *Id.* at 6.

Section VII lists the reasons that Harman Green may rely on as just cause for terminating the representation. Harman Green relies on subsection (d) of § VII, which states that one just cause for withdrawal is if Comfort "refuse[s] to cooperate with the Firm, thereby making the Firm's representation of [Comfort] unreasonably difficult." Harman Resp. to

Mot. To Strike (ECF No. 24-3) 5. Harman Green's motion to withdraw closely resembles this contractual language in that it states that the "Plaintiff and Harman Green simply have irreconcilable differences stemming from communications. As well, Plaintiff and Harman Green have fundamentally different litigation strategies, making continued representation impossible." Harman Mot. to Withdraw (ECF No. 18) 1. Harman Green's withdrawal triggered the § VII Termination of Retainer language, and, therefore, the firm is owed attorney's fees (which will be the larger of quantum meruit or their contingency agreement) and costs and expenses.

IV

The Contract has laid out what fees will be accrued during the course of representation and how those fees will be altered if a party withdraws from the Contract. The remaining question is how Harman Green can recover the fees it is owed given the contingency fee structure and the still-pending status of the case.

Section IX in the Contract establishes the mechanism of a attorney's charging lien to recover the costs and expenses and attorney's fees. The Contract provides in § IX, entitled "Lien":

> The Firm shall have a lien for costs and expenses and attorney's fees incurred by our office on any recovery obtained, whether obtained by settlement or court action, whether obtained prior or subsequent to the commencement of litigation, and whether obtained by this office or not.

Harman Resp. to Mot. to Strike (ECF No. 24-3) 6.

The Contract unambiguously provides that a lien will be placed on any recovery covering costs and expenses and attorney's fees, and that the lien will be in place no matter when the underlying lawsuit is resolved or who ultimately resolves it. Comfort's assertions that the proposed settlement is the same amount as the initial severance package and that the settlement was not achieved through Harman Green's work, do not change the Contract's terms.

Unless Comfort can show that Harman Green withdrew from the case for a reason not included in § VII, the Contract is enforceable, and Harman Green's lien for costs and expenses and attorney's fees is valid. Because Comfort has not offered any evidence to refute Harman Green's stated reason for withdrawing, and since Harman Green has shown that it abided by the Contract by withdrawing for a purpose listed in the Contract, the motion to strike must be denied.

V

The court also declines to grant a declaratory judgment. The motion to strike is the correct legal proceeding at this time. The Contract is unambiguous, and no evidence of unconscionability has been presented. Moreover, without a finalized amount of recovery in Comfort's suit against UMB, determined through settlement or otherwise, the issue is not ripe, and, therefore, a declaratory judgment is not warranted at this time.[3]

---

[3] A declaratory judgment action is ripe for adjudication only where an "actual controversy" exists. *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) (quoting 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the right and other legal relations of any interested

\* \* \*

For the reasons explained, Comfort's September 23, 2025 motion to strike corrected notice of attorney lien is denied.

**SO ORDERED**.

November 25, 2025.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

party seeking such declaration.")).